IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KARL KEVIN HILL,**

    **Plaintiff,**

**v.**                                                                     **CIVIL ACTION NO. 2:09cv142**
                                                                         **(Judge Maxwell)**

**WARDEN JOEL ZIEGLER,**
**PA-C HSA LEWIS BRESCOACH,**
**PHYSICIAN MICHAEL WALTERS,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I.  Procedural History

The pro se plaintiff initiated this case on December 8, 2009, by filing a civil rights complaint against the above-named defendants.  On December 10, 2009,  the plaintiff was granted permission to proceed as a pauper.  The plaintiff paid his initial partial filing fee on January 4, 2010. On March 2, 2010, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time.  Summonses were issued that same day.  On June 17, 2010, the defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a memorandum in support.  A <u>Roseboro</u> Notice was issued on June 18, 2010, and on July 19, 2010, the plaintiff filed a response.

### II.  The Complaint

The plaintiff is a federal inmate, who is  incarcerated at the FCI in Morgantown, West Virginia.

("FCI Morgantown"). In his complaint, the plaintiff alleges that the Health Services Staff at FCI Morgantown failed to properly diagnose and treat problems with his left knee, back, kidneys, liver and pelvic area and failed to provide psychological support for these conditions. The plaintiff seeks "proper diagnosis and treatment of the conditions", physical therapy, pain management, and 6 million dollars in damages to meet his future needs and in compensation for pain and suffering. (Doc. 1, p. 5).

### III. The Answer

For their answer, the defendants have filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. As support therefore, the defendants assert the following:

A. All of the plaintiff's claims, other than his claims related to left knee and back pain must be dismissed for failure to fully exhaust his administrative remedies;

B. The plaintiff's claim against Warden Ziegler must be dismissed due to lack of personal involvement;

C. The plaintiff's claims against Dr. Walters must be dismissed because *respondeat superior* cannot form a basis for violations of a Constitutional right in any <u>Bivens</u> action;

D. The plaintiff had filed to establish a claim for which relief may be granted for a violation of the Eighth Amendment;

E. The defendants are entitled to qualified immunity.

### IV. The Plaintiff's Response

In response to the defendants' Motion to Dismiss or, for Summary Judgment, the plaintiff asserts that "non treatment" in this matter is the result of intentional negligence and mistreatment which is arbitrary in nature and arises out of prison officials deliberate indifference so as to meet "an arbitrarily established cost containment goal in defiance of the community standard of treatment and

the health care needs of the petitioner." (Doc. 40, p. 3).

### III. Standard of Review

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than

3

merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.

4

Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  Id.  This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial."  Anderson at 256.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  Id. at 248.   To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson at 248.  Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita at 587 (citation omitted).

**IV.  Analysis**

**A. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997(e)(a).  Exhaustion as provided in § 1997(e)(a) is mandatory.  Booth v. Churner, 532 U.S. 731, 741 (2001).  A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies.  Porter v. Nussle, 534 U.S.

516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted **prior to** filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

A review of the plaintiff's administrative history in SENTRY reveals that the plaintiff exhausted his administrative remedies regarding his complaints concerning left knee and back pain. See Doc. 3). However, the plaintiff did not fully exhaust his administrative remedies regarding his claims of pelvic, liver and kidney ailments and lack of psychological care. Id.

Specifically, a review of the plaintiff's administrative remedy history reveals that on April

---

[1] Id.

25, 2009, the plaintiff filed Remedy ID # 536330-F1[2], at the institutional level requesting to see a specialist to have an MRI. He also complained that there was no record in his medical file of his recent abdominal complaints or previous spinal injury. Although the plaintiff references attachments to this submission, there were no attachments contained in the Remedy file. (Doc. 34-5. P. 3). The remedy was denied at the institutional level on May 8, 2009. (Doc. 34-5, p.5).

On May 18, 2009, the plaintiff appealed the denial by filing Remedy ID. No. 5636330-R1 with the Regional Office. He only alleged that he was dissatisfied with the response to his request for a medical referral and an MRI. He noted that he reported to the medical department on February 13, 2008, that he injured his left knee, back and right elbow when he fell on the ice. He again requested to see a specialist. Because the plaintiff did not raise any issue regarding his pelvis, liver or kidney ailments, nor does he mention the need for psychological care, he was precluded from appealing those issues any further. See 28 C.F.R. § 542.15(b)(2); Tharp v. Justice, No. 5:05-cv-6, 2006 WL 1677884 (E.D. Tex. June 16, 2006) ("28 C.F.R. § 542.15(b)(2) says that an inmate may not raise in an appeal issues not raised in the lower level filings. Thus, to exhaust a claim properly, it must be raised in all three steps, the BP-9, BP-10, and BP-11 grievances. . ."). The remedy was denied on May 26, 2009 (Doc. 34-5, p. 7).

On February 8, 2010, the plaintiff appealed the denial by filing Remedy ID No. 536330-A1 with the Central Office level. (Doc. 34-5, p. 10). The plaintiff noted that he was incorporating

---

[2] Administrative remedy numbers identify at what level the remedy was filed and the number of times the remedy was filed at that level. A remedy filed at the institution level (BP-9) is identified by an F, at the Regional Office level (BP-10) an R, and at the Central Office level (BP-11) an A. An initial remedy filed at the institution level is assigned an F1. If the administrative remedy is rejected and re-filed at the institutional level, the re-filed remedy is identified as F2. The same system is used for all three levels. See Exhibit 3, ¶ 5.

his BP-8.5, BP-9, and BP-10 filing as part of his BP-11 administrative remedy. The plaintiff further noted that these filings assert in narrative fashion the abject failure of the Health Services Department at FCI Morgantown to treat his various and deteriorating maladies. The plaintiff further alleged that this failure was wilful and part of an effort to "ration health care" with the objective of denying him medical care that would conform with accepted community standards. (Doc. 34-5, p.10). The plaintiff's final remedy was denied on April 28, 2010. (Doc. 34-5, p. 9).

Accordingly, the plaintiff has only exhausted his administrative remedies with regard to his complaints about his knee and lower spine. Because the plaintiff did not fully exhaust his administrative remedies regarding his alleged pelvic, liver, kidney and psychological issues, those claims should be dismissed with prejudice because it is now impossible for him to accomplish exhaustion.[3]

## B. Warden Joel Ziegler and Dr. Waters

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Truloch v. Freeh, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.

---

[3]Within 20 calendar days of the date of the occurrence on which the complaint is based, an inmate may file a written complaint with the institution on the proper form. See 28 C.F.R. § 542.14(a); 542.15(a). Because it now clear that the plaintiff failed to initiate the administrative remedy process with respect to his medical claims, other than his knee and back, within 20 calendar days of the date of the occurrence on which the complaint is based, he has procedurally defaulted these claims and cannot pursue them further.

8

See Zatler v. Wainbright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a Bivens case. Rizzo v. Good 423 U.S. 362 (1976).

Here, Plaintiff does not allege any personal involvement on the part of Defendant Ziegler. Instead, it appears that Plaintiff has named this Defendant only in his official capacity as the Warden of FCI Morgantown. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, remedy under Bivens is not available against defendant Ziegler in his official capacity, and he should be dismissed as a defendant in this action. Moreover, to the extent that the plaintiff may be asserting that the Warden Ziegler was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a Bivens claim. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D.Md. March 31, 2003).

Likewise, the plaintiff claims against Dr. Walters also fail to state a Bivens claim because he does not, and cannot, make any claim of personal involvement on the part of Dr. Walters. Dr. Walters is the Clinical Director at FCI Morgantown. As previously noted, *respondeat superior* cannot form the basis of a claim for violations of a Constitutional right in any Bivens action. See Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1948 (May 18, 2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Accordingly, Dr. Walters in not a proper defendant solely by virtue of his position as Clinical Director. Moreover, the medical records show that Dr. Walters did not provide any care to

the plaintiff until March 2010, three months after the complaint was filed. (Doc. 34-3, p. 6). Accordingly, Dr. Walters could not have had any personal involvement in the plaintiff's medical care, and the plaintiff cannot show that Dr. Walter's own actions violated the constitution with respect to the allegations in the complaint.

C. **Eighth Amendment**

To state a claim under the Eighth Amendment, the plaintiff must show that the defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[4]

---

[4] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

---

arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

In the instant case, there is no question that the plaintiff is suffering from degenerative joint disease in his left knee and lower back which impact his mobility and quality of life. However, the mere fact that the plaintiff may be suffering from a severe medical condition, does not mean that he is entitled to relief from this Court. Rather, he bears the burden of demonstrating that medical staff, including HSA Brescoach, knew that he was suffering from these ailments and were deliberately indifferent. Clearly, there is no evidence to support such a claim, and in fact, the medical record demonstrates that the plaintiff received medical attention for these conditions.

The medical record demonstrates that soon after he arrived at FCI Morgantown, the plaintiff went to Health Services with complaints regarding his knee and was immediately given treatment for the invasive post-surgical infection he acquired as well as significant follow up. In the three and a half years that the plaintiff has been at FCI Morgantown, he has only gone to Health Services on his own initiative on six occasions to complain of chronic left knee pain, with one of those visit occurring after he filed the instant complaint. On five of those occasions he also complained of back pain and on two occasions he complained of hip pain. He was given pain medication, a knee brace, a permanent lower bunk pass, restricted activity jobs, and often periods of prescribed convalescence or bed rest. The plaintiff was also prescribed physical therapy to help rehabilitate his left knee after the infection was successfully treated. The plaintiff has received one spinal x-ray, one x-ray of his hip, one x-ray of his pelvis, and three x-rays of his left knee. In addition, the medical record indicates that the plaintiff reported to Health Services staff that after receiving Ibuprofen, his lower back and knee pain was alleviated. Accordingly, the medical evidence demonstrates that the medical staff was attentive to the plaintiff's knee and back pain. (Doc. 34-3).

In addition, even though the plaintiff has not exhausted his administrative remedies with respect to his alleged kidney, liver, and pelvic areas, it is clear that he received appropriate care for those complaints, as well. The plaintiff did not complain of abdominal pain until three months after this complaint was filed. Dr. Walters ordered an x-ray of the plaintiff's chest, hips, and pelvis. The x-rays were negative except for mild degenerative joint disease in both hips and moderate degenerative joint disease in the lower spine. Moreover, the abdominal x-ray revealed that there was no history of the prior pelvic fracture the plaintiff claimed to have sustained. Dr. Walters also ordered a CT-Urogram to investigate possible kidney/abdominal issues. The results showed no abnormalities or the kidneys and no abdominal masses. (Doc. 34-3, p. 7).

Finally, even though he did not exhaust his administrative remedies with respect to psychological care, the plaintiff never indicated to medical staff that he felt the need for psychological help. Additionally, neither Dr. Walters nor HSA Brescoach saw any indication that the plaintiff needed psychological care during their personal interactions with him. (Docs. 34-2, pp. 4-5; 34-3, p. 8).

Furthermore, to the extent that the plaintiff may be alleging that his medical care at FCI Morgantown amounted to malpractice, ordinary medical malpractice based upon negligence in providing care does not state a claim under the Eighth Amendment. See Estelle, *supra* at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Finally, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care." See e.g,, Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Here, even if the plaintiff received "bad care," he clearly received care for his knee and back. Accordingly, nothing in

the record or in the plaintiff's complaint establishes any facts sufficient to support a finding that the defendants have been deliberately indifferent to his medical needs, and accordingly, the plaintiff's complaint should be dismissed for failure to state a claim.

## VI. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. 33) be **GRANTED**, and the plaintiff's complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim upon which relief can be granted.

Any party may file within fourteen (14) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Robert E. Maxwell, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United

States District Court.

DATED: August 10, 2010.

                                                /s/ James E. Seibert
                                                JAMES E. SEIBERT
                                                UNITED STATES MAGISTRATE JUDGE